UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SPECIALTY FREIGHT SERVICES, INC, ASSIGNEE OF J&J SNACK FOODS SALES CORP., INC.,<br><br>Plaintiff,<br><br>v.<br><br>MORRIS TRANS CORP.,<br><br>Defendant. | CIVIL ACTION NO. 3:24-CV-00672<br><br>(SAPORITO, J.) |

# MEMORANDUM

This matter comes before the Court on the plaintiff's motion to enter default judgment under Rule 55(b)(1) of the Federal Rules of Civil Procedure. The plaintiff, Specialty Freight Services ("SFS"), filed its complaint against the defendant, Morris Transportation Corporation ("Morris"), on April 18, 2020. (Doc. 1). The defendant, however, failed to appear before the Court or respond to the complaint, and the plaintiff subsequently moved for entry of default on May 22, 2024. (Doc. 7). The Clerk of Court entered that default on May 30, 2024. (Doc. 9). The plaintiff has now moved for a default judgment. (Doc. 10).[1]

---

[1] We note that the plaintiff has incorrectly requested a default
*(continued on next page)*

I.  Background[2]

The plaintiff is a federally-licensed property broker operating under authority issued to it by the Federal Motor Carrier Safety Administration. The defendant is a foreign business corporation organized and presently dissolving under the laws of the state of New Jersey. It is additionally a federally licensed motor carrier of property operating under authority by the Federal Motor Carrier Safety Administration.

On May 18, 2023, SFS and Morris entered into a Broker Carrier Contract Agreement (hereinafter "Agreement"), in which Morris agreed to transport 26 pallets of frozen snack foods to Vistar Northwest in Portland, Oregon. The Agreement provided, among other stipulations, that Morris furnish vehicles properly equipped for the transportation of the described commodities and maintain liability for all actual loss, damage, injury, or delay of shipments transported pursuant to the

---

judgment pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure, as the plaintiff has not only sought a sum certain, but also attorneys' fees. Therefore, we will construe the plaintiff's motion as an application for a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure.

[2] All facts are taken from the plaintiff's complaint. (Doc. 1).

Agreement, including attorneys' fees and additional court-related costs. The plaintiff alleges that the shipment of frozen snack foods was delivered to Morris in good order and condition, with shipping labels clearly describing the temperature-sensitive nature of the shipment. SFS additionally contends that at some point during its transit to Vista Northwest, the frozen snacks were thawed due to increased temperatures within the carrier. The plaintiff has provided documentation of the truck driver's written admission of this allegation. On arrival, the goods were subsequently refused by Vista Northwest as the thawing caused by the fluctuating temperature changes deemed the goods unsalvageable. The shipment was then taken to a landfill, causing the destruction of $52,637.64 worth of product.

The plaintiff requests $62,804.90 for damaged goods, attorneys' fees, and previously-paid freight charges under three claims: (1) liability under the Carmack Amendment; (2) breach of contract; and (3) negligence.

## II. Legal Standard

The entry of a default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. The entry of default "is a prerequisite

to entry of a default judgment under Rule 55(b)." *Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D. Pa. 1985). The Clerk of Court must enter a default against a defendant that has "failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). A plaintiff may move for a default judgment pursuant to Rule 55(b) only after default has been sought and entered by the Clerk under Rule 55(a). Fed. R. Civ. P. 55(a),(b)(2).

Nevertheless, the decision to enter a default judgment lies ultimately with the discretion of the district court. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Courts faced with a motion for default judgment consider the three *Chamberlain* factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct." *Id.* However, "when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)." *Asendia USA v. AdvancePost, Inc.*, No. 1:12-CV-2169, 2013 WL 877132, at *1 (M.D. Pa.

Mar. 8, 2013). Courts may even enter a default judgment "based solely on the fact that the default has occurred." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

Even if a default judgment may be appropriate, however, the Court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Serv. Emps. Int'l Union Loc. 32BJ, Dist. 36 v. ShamrockClean, Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018). Nevertheless, while a defaulting party does not indeed admit those conclusions, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

### III. Discussion

Before we analyze the substantive nature of the plaintiff's claims, we must first briefly turn our attention to the plaintiff's supporting documents for those claims. The record indicates that Morris was an intermediary carrier for a shipment and delivery of J&J Snack Foods. The plaintiff has provided two separate bills of ladings to confirm the

shipment and delivery.³ *See* (Doc. 13-1, at 13–14). The first bill of lading, prepared and issued by the shipper, Gress Refrigerated Warehouse ("Gress"), indicates that Morris picked up the shipment from the warehouse. (*Id.*, at 13). The second bill of lading, again issued by Gress, proves that Morris delivered the shipment to Vistar Northwest. (*Id.*, at 14). Most importantly, however, the second bill of lading notes that at some point during the shipment, the "product thawed out and refroze," and Vistar Northwest rejected the shipment. (*Id.*). Indeed, this story is corroborated by Morris's truck driver, Giga Kasrelishvili. (*Id.,* at 15). Nonetheless, as the plaintiff has moved for default judgment, we find that the plaintiff has failed to prove it contracted with Morris to transport the spoiled goods at issue in the underlying action.

The plaintiff argues that SFS and Morris agreed to:

> [T]ransport property, specifically 26 pallets of frozen snack foods weighing 41,155 pounds, belonging to J&J Snack Foods and being stored at a warehouse owned or operated by Gress Refrigerated Services, from Scranton, PA, on May 18, 2023, to consignee Vistar Northwest in Portland, OR, at an agreed rate and pursuant to specific

---

³ We must acknowledge that while the plaintiff has provided copies of the bills of ladings, the quality of those copies makes it difficult for the Court to ascertain the details included within them. Therefore, we rely on the plaintiff's affidavit to supplement those details. *See generally* (Doc. 13-1).

terms.

(Doc. 1, at 4). We acknowledge that the plaintiff has attached a copy of a signed load-rate confirmation that details many of the alleged conditions of the shipment. *See* (Doc. 13-1, at 9). The plaintiff, however, has not provided any support that a load-rate confirmation can substitute as a duly executed contract. We find that the load-rate confirmation merely reflects an indication of a preliminary outline of a contract; we do not view it as a duly executed contract that imposes liability on Morris. Indeed, we believe that it is the broker-carrier agreement that outlines the enforceable mutual obligations between the parties for purposes of liability. *See generally* (Doc. 13-1, at 6–8). The plaintiff has unfortunately failed to provide a copy of the duly executed broker-carrier agreement between it and Morris.[4] Without that agreement, we find it difficult to ascertain any contractual liability placed upon the defendant by the

---

[4] The plaintiff attached only an unsigned standard template of a broker-carrier agreement to its complaint. (Doc. 1). On February 14, 2025, in consideration of the plaintiff's motion for default judgment, we ordered the plaintiff to provide a complete, duly executed copy of the broker-carrier agreement between the parties. (Doc. 12). On February 20, 2025, the plaintiff timely responded to our Order and reattached the same incomplete standard broker-carrier agreement. (Doc. 13). The plaintiff explained that "the original signed agreement was inexplicably not saved." (Doc. 13-1, ¶ 5).

plaintiff, especially concerning the claims at issue in the underlying action.

For example, the plaintiff has alleged liability under the Carmack Amendment against the defendant. The Carmack Amendment to the Interstate Commerce Act provides a cause of action for shippers against carriers for the loss or damage of shippers' goods during transportation. *Bunis v. Masha Mobile Moving & Storage, LCC*, 674 F. Supp. 3d 186, 192 (E.D. Pa. 2023). The Amendment "imposes liability on a common carrier for the actual loss or injury to goods in an interstate commerce shipment." *Id.* (citing *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223 n.4 (3d Cir. 2001)). Specifically, the Carmack Amendment provides:

> [A] carrier providing transportation or service … shall issue a receipt or bill of lading for property it receives for transportation…. That carrier and any other carrier that delivers the property … are liable to the person entitled to recover under the receipt or bill of lading.

*Id.* (quoting 49 U.S.C.A. § 14706(a)(1)). To impose liability, shippers must prove "(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of the damages" to recover for liability under the Act. *Paper Magic Grp., Inc.*, 318 F.3d at 461 (quoting *Beta Spawn, Inc.*, 250 F.3d at

223). The plain language of the Carmack Amendment, however, "governs [only] the liability of common carriers on bills of ladings." *Bunis*, 674 F. Supp. 3d at 192 (quoting *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003).[5]

The attached bills of ladings in this action, however, only concern four parties, none of which are SFS. The bills indicate that Morris picked up a J&J Snack Foods shipment from Gress Refrigerated Warehouse and transported it to Vistar Northwest. We cannot allow the plaintiff to recover for liability under the Carmack Amendment when the bills the claims are based on make no mention of the plaintiff in their entirety. The plaintiff would need to show some sort of external causal relationship to a shipper or carrier to recover for liability under the Act. Nonetheless, because it has failed to provide the duly, executed broker-carrier agreement necessary to prove that nexus, we cannot grant the plaintiff's motion for default judgment on this count.

Indeed, the plaintiff's breach of contract claim against Morris fails for similar reasons. To succeed on such a claim, the plaintiff must prove:

---

[5] Bills of ladings are transportation contracts between a shipper or consignor and a carrier. *Bunis*, 674 F. Supp. 3d at 192 n.37 (citing *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993)).

"(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Key Consol. 2000, Inc. v. Troost,* 432 F. Supp. 2d 484, 487 (M.D. Pa. 2006) (quoting *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)). The plaintiff again, however, has failed to provide a duly executed contract that imposes any liability on behalf of Morris. An enforceable contract between parties must dictate "the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009) (quoting *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 123 A.3d 663, 666 (1956)). The plaintiff's broker-carrier contract template is missing all necessary information to reflect any obligation, such as the date of the agreement, the parties involved, and authorized signatures from either party. Therefore, the incomplete contract prevents us from ascertaining the nature and extent of Morris's alleged obligations. Moreover, while bills of lading are subject to the general rules of construction under common law, *see Texas & Pacific Ry. Cov. v. Reiss*, 183 U.S. 621, 629–31 (1902), the attached and signed bills of ladings show only a relationship between

Morris, J&J Snack Foods, Gress Refrigerated Warehouse, and Vistar Northwest. They fail to make any mention of, or reference to, SFS in their entirety. Therefore, we find that SFS has failed to prove an existence of a contract between itself and Morris that imputes any liability upon Morris, and thus, a breach of any duty imposed by a contract. We will deny the plaintiff's motion for default judgment on this claim.

In light of our analysis, we must additionally deny the plaintiff's motion for default judgment concerning its negligence claim against the defendant. "The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Jean v. Bucknell Univ.*, 534 F. Supp. 3d 404, 411 (M.D. Pa. 2021) (quoting *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 552, 756 A.2d 1166, 1168 (2000)). Here, the plaintiff's negligence claim stems from the defendant's "failure to undertake and perform each and every one of the contractually agreed-upon obligations and duties" alleged in its broker-carrier agreement. (Doc. 1, ¶ 38). The plaintiff, however, has failed to provide a copy of the duly executed broker-carrier agreement that imposes its alleged "obligations and duties" upon the defendant. We therefore cannot hold that the defendant owed a contractual duty of care to the plaintiff without

any evidence indicating that the plaintiff and defendant were bound by a valid contract. We must deny the plaintiff's motion for default judgment on this claim.

### III.  Conclusion

For the following reasons, we find that the unchallenged facts do not constitute a legitimate cause of action. We will therefore deny the plaintiff's motion for default judgment.

An appropriate order follows.

Dated: March 11, 2025           *s/Joseph F. Saporito, Jr.*
                                JOSEPH F. SAPORITO, JR.
                                United States District Judge